**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 14-113-DLB**

**PATRICIA L. BUTT**

**PLAINTIFF**

**vs.**          **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**          **DEFENDANT**
**Commissioner of Social Security**

**************************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review

of an administrative decision of the Commissioner of Social Security.  The Court, having

reviewed the record, will **affirm** the Commissioner's decision, as it is supported by

substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Patricia Butt filed her current application for Supplemental Security Income

(SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of July 30,

2008.  (Tr. 103).  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 103-06).

On September 10, 2010, Administrative Law Judge Christopher B. McNeil held an

administrative hearing at Plaintiff's request.  (Tr. 10).  On November 10, 2010, ALJ McNeil

issued an unfavorable decision, denying Plaintiff's claim.  (Tr. 110).  Plaintiff subsequently

requested that the Appeals Council review that decision.  (Tr. 10). It did so, and on June

26, 2012, issued an order of remand.  (Tr. 10).  The Appeals Council's order stated that

1

ALJ McNeil's decision did not contain the analysis of obesity required pursuant to Social Security Ruling (SSR) 02-1p.  (Tr. 10).   The Appeals Council's instructions on remand were for the reviewing ALJ to give further consideration to Plaintiff's obesity and to her maximum residual functional capacity.  (Tr. 10).

On March 1, 2013, ALJ Larry A. Temin reviewed Plaintiff's claim pursuant to the Appeal Council's instructions, and denied her claim.  (Tr. 10). This decision became the final decision of the Commissioner when the Appeals Council denied review on May 22, 2014.  (Tr. 1-5).

On June 1, 2014 Plaintiff filed the instant action, proceeding *pro se*.  (Doc. # 1).  This matter has culminated in cross-motions for summary judgment, which are now ripe for review.  (Docs. # 17 and 18).

## II.  DISCUSSION

### A.      Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

2

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.      The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). At Step 2, the ALJ found Plaintiff's lumbar spine changes and lumbar spine strain, obesity, mood disorder, anxiety disorder, and possible personality disorder to be severe impairments with the meaning of the regulations. (Tr. 12).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15). Before reaching this conclusion, the ALJ determined that Plaintiff's degenerative changes and strains of the lumbar and cervical spine did not meet the requirements of Listing 1.04 (disorders of the spine) because she did not suffer from compromise of a nerve root or the spinal cord with evidence of nerve-root compression (Tr. 15). The ALJ further found that Plaintiff did not meet the requirements of Listing 1.04C (lumbar spinal stenosis) because she is able to effectively ambulate, as defined in section

3

1.00B2b (Tr. 15).  The ALJ also determined that Plaintiff's depressive disorder, anxiety disorder, and personality disorder did not meet the requirements of Listing 12.04 (affective disorders, including depression), Listing 12.06 (anxiety disorders), or Listing 12.08 (personality disorders) because "claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation." (Tr. 17).  Lastly, the ALJ considered Plaintiff's obesity, as instructed by the Appeals Council on remand.  (Tr. 18).  While there is no specific listing covering obesity, the ALJ noted that the condition "appears to contribute to the claimant's physical limitations" and was considered, consistent with SSR 02-1P in assessing her residual functional capacity.  (Tr. 18).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work, with the following limitations:

> "The claimant can lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently.  She can stand/walk for up to 6 hours in an eight-hour work day, and can [sit][1] for up to 6 hours in an 8-hour workday.  She can only frequently stoop, kneel, crouch and crawl.  She can only occasionally climb ramps and stairs.  She should never climb ladders, ropes, or scaffolds or work at unprotected heights.  The claimant is able to remember and carry out detailed but uninvolved instructions.  She is able to sustain concentration and attention for 2 hours at a time, and then requires a rest break of 5 minutes. Her job should not require more than superficial interaction with the general public, coworkers or supervisors.  Her job should not require more than ordinary and routine changes in work setting or duties."

(Tr. 18).  The ALJ further noted that the claimant is capable of performing past relevant work as a fundraiser because such work "did not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Tr. 27).

---

1)   ALJ Temin's decision appears to have inadvertently omitted the word "sit" from the section discussing Plaintiff's ability to perform medium work.  The Court has inserted it here for clarity.

The ALJ proceeded to the final step of the sequential evaluation.[2]  At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform.  (Tr. 27-28).  The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC.  (Tr. 27-28).  The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find the following work at the medium exertion level:  kitchen helper (1,900 jobs regionally/281,000 nationally), shipping/receiving clerk (711 jobs regionally/86,000 jobs nationally), and production planning and expediting (146 jobs regionally/15,000 jobs nationally).  Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act.  (Tr. 28).

## C.    Analysis

Plaintiff is proceeding *pro se* in this appeal, just as she did in the second of her two reviews before an ALJ.  *Pro se* documents are to be liberally construed, and Plaintiff's complaint and motion for summary judgment in this case will be so construed.  *See Erickson v. Pardus*, 551 U.S. 89, 95 (2007).

Additionally, *pro se* claimants are entitled to a heightened review standard by the ALJ if they are: (1) without counsel; (2) incapable of presenting an effective case; and (3)

---

2) Ordinarily, when the ALJ finds that the claimant is capable of performing past relevant work, her analysis ends.  In this case, however, the ALJ preceded in the alternative and conducted the Step 5 analysis to determine if a significant number of jobs existed for Plaintiff in the national economy.  (Tr. 27).

unfamiliar with the hearing procedures before an ALJ.  *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)(holding that the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" when claimant is without counsel and incapable of presenting an effective case) (citing *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972); *see also Wilson v. Comm'r Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008)(specifying the three predicate requirements of the *Lashley* review standard).  Although Plaintiff is proceeding without counsel, the record reflects that she is intelligent and is capable of presenting an effective case.  She has her GED, CNA, reads often, and participated fully in her hearings before the ALJ.  The record further indicates that she is sufficiently familiar with the proceedings, having appeared before an ALJ on another occasion.  Accordingly, the Court concludes that Plaintiff was not entitled to *Lashley*'s heightened review.

Even if that standard applied here, the ALJ engaged in the type of fact-seeking that *Lashley* envisions for *pro se* claimants.  He thoroughly questioned Plaintiff and attempted to elicit all available records, trying to ensure that the claim was as factually developed as possible.  *See Morgan v. Astrue*, No. 3:09-CV-262, 2010 WL 3723992, at *8 (E.D. Tenn. June 30, 2010)(holding that *Lashley* does not expect nor permit the ALJ to become the *pro se* party's "investigator, researcher, records custodian, or advocate outside of the courtroom.").  Specifically, when Plaintiff indicated that there were records from an orthopedist that were not in the record, the ALJ encouraged her to contact the orthopedist's office so they could send any such records to him.  (Tr. 44).  Accordingly, the Court finds that the ALJ properly conducted Plaintiff's *pro se* Social Security hearing.

6

After reviewing Plaintiff's motion for summary judgment, it appears she is advancing three arguments. First, she claims that the ALJ erred in determining which of her impairments were severe. Second, she states that the ALJ's decision was "unfair" and "lacks evidence". (Pl. Br. 4). The Court construes this as an attack on the residual functional capacity assessment. Lastly, Plaintiff claims she has had several seizures since the ALJ's decision. The Court construes this as a request for a sentence six remand pursuant to § 405(g). Each argument will be addressed in turn.

### 1. The ALJ did not err determining which of Plaintiff's impairments were severe.

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1521(b). Basic work activities, defined as those "abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The claimant's impairments must have lasted or be expected to last for a continuous twelve-month period, unless the condition is expected to result in death. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1509.

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle'* in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is  "liberally construed in favor of the claimant" at this step in the analysis.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x. 425, 428 (6th Cir. 2007).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience."  *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the Step Two screening process.  20 C.F.R. § 404.1520(a)(4). Because the regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether.  20 C.F.R. § 404.1545(a)(2).  For this reason, courts have consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis. *Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r,* 299 F. App'x. 516, 522 (6th Cir. 2008)(finding it "legally irrelevant" that the ALJ determined that

8

some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

At Step 2, the ALJ concluded that Plaintiff suffered from the following severe impairments: (1) lumbar spine degenerative changes/lumbar spine strain; (2) obesity; (3) a mood disorder; (4) an anxiety disorder; (5) and a possible personality disorder.  (Tr. 12). Having found that Plaintiff suffered from multiple severe impairments, the ALJ proceeded with the disability determination analysis.

Assuming *arguendo* that Plaintiff's chronic obstructive pulmonary disease, carpal tunnel syndrome, left and right shoulder problems, right ankle problems, high blood pressure, and seizure disorder should have been classified as severe impairments, the error was harmless because the ALJ found that Plaintiff had other severe impairments and completed the disability determination analysis.  In accordance with the regulations, the ALJ considered both severe and non-severe impairments, including evidence of the above-mentioned non-severe impairments, at subsequent steps in the analysis. (Tr. 15). Therefore, the ALJ did not err in determining that Plaintiff's chronic obstructive pulmonary disease, carpal tunnel syndrome, left and right shoulder problems, right ankle problems, high blood pressure, and seizure disorder were non-severe impairments.  *See Maziarz,* 837 F.2d at 244.

## 2. The ALJ did not err in determining Plaintiff's residual functional capacity.

When medical reports and laboratory findings demonstrate that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [his

or her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how these symptoms limit the claimant's capacity for work.   20 C.F.R. § 404.1529(c)(1).   Before making this determination, the ALJ must consider all available evidence, including objective medical evidence, the claimant's own statements about symptoms, opinions from treating and examining physicians, and any other relevant evidence in the case record.  20 C.F.R. § 404.1529(c)(1)-(3).  The claimant's symptoms "will be determined to diminish [his or her] capacity for basic work activities to the extent that [his or her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(4).

At Step 4, the ALJ found that Plaintiff is capable of medium work with the limitations noted.  (Tr. 18).  In making his determination, the ALJ relied on the assessment of Dr. Jignesh Shah, who conducted a consultative physical examination of the Plaintiff on September 20, 2008.  He found that all of Plaintiff's problems were "actually well controlled."  Plaintiff exhibited no weakness and her spine exhibited good range of motion. Pulmonary functions and one-second forced-expiratory-volume tests were normal. Plaintiff's range of motion for her shoulder, elbow, wrist, fingers, thumbs, and cervical spine were normal.  Further testing in September 2012 showed only "mild degenerative changes" to Plaintiff's spine, and indicated no progression from previous tests.  (Tr. 23-25; 774). These sources support the ALJ's RFC determination as to Plaintiff's physical symptoms.

As for mental limitations, the ALJ's noted all mental health examinations of the Plaintiff showed no more than a moderate level of difficulty caused by her various disorders.  (Tr. 21-22, 25).  By her own testimony, they caused no more than mild

10

limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 467, 505). Accordingly, this determination is also supported by substantial evidence.

### 3. Plaintiff has not demonstrated the need to remand the case to the ALJ, pursuant to sentence six of 405(g).

Plaintiff is not entitled to remand pursuant to sentence six of § 405(g) because the new evidence to which she points is not material. Sentence six of § 405(g) addresses situations "where a claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). Sentence six states:

> "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both . . . ." 42 U.S.C. 405(g).

Evidence is "material" if it would "likely change the Commissioner's decision." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *see also Courter*, 479 F. App'x at 725. In her motion for summary judgment, Plaintiff claims that she is experiencing increased seizures since the ALJ's decision. While there may be "good cause" for her not presenting this new evidence to the ALJ, it does not matter because the new information is not material. Plaintiff notes that there have been no tests and no diagnosis to suggest a worsening in seizures; in fact, by Plaintiff's own admission, the doctor who most recently saw the Plaintiff found that her fainting was most likely caused by dropping blood pressure

11

rather than seizures.  (Pl. Br. 2).  This evidence would not change the ALJ's decision.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 17) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 18) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 12th day of February, 2016.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\SocialSecurity\MOOs\Covington\2-14-113 MOO.wpd